SAVOY, Judge.
The State of Louisiana, through the Department of Highways, filed this suit expropriating for highway purposes a strip of land off the east side of defendant’s property, which is located on Louisiana Highway No. 13 about three miles north of Eunice, in Evangeline Parish, Louisiana. The plaintiff deposited $3,820.00 as just compensation for the property expropriated. Defendant filed responsive pleadings alleging the amount deposited was inadequate and seeking an increase in the amount granted for the value of the land taken, as well as severance damages. After trial on the merits, the district court increased the award $8,180.00, making a total of $12,000.00. From this judgment plaintiff has appealed to this Court, and defendant has answered the appeal.
The issues involved are the value of the property expropriated, and the amount of severance damages, if any, to the remaining property.
The record shows that the property taken is a part of Green Oaks Subdivision. Defendant corporation, formerly Mamou Development Company, Inc. and now Mamou Investment Company, Inc., was organized in 1959 for the purpose of acquiring and developing the property which comprises the subdivision. On April 30, 1959, defendant purchased the 20.37 acres from F. J. Derouen, Sr., for $20,000.00. The property fronts 664 feet on La. Highway 13 and extends back a depth of 1281 feet. This property is the first high level open land north of the wooded area flanking Bayou de Cannes. There are numerous well-spaced stately green oak trees throughout the subdivision, consistent with its name.
The subdivision was divided into 99 lots in accordance with the plat of the subdivision dated July 1, 1959, filed in the Clerk of Court’s office in Evangeline Parish, Louisiana. A road enters the subdivision from La. Highway 13 in the middle of the property, and there are 12 lots fronting on the highway 156 feet in depth. Ten of the lots are 50 feet wide, and two of the lots are 54.1 feet wide. There are 87 lots within the back portion of the subdivision, which are zoned residential. Restrictive covenants were filed of record on July 14, 1959, and October 28, 1959. The property was cleared and levelled, and the roads were cut. Gas, water, electricity and telephone services were brought to the property. In accordance with well-formulated plans, an attempt was made to immediately sell a number of the lots at an attractive price. Between August 8, 1959, and April 27, 1960, nineteen of the residential lots were sold at prices ranging from $450.00 to $600.00. Witnesses for defendant testified that these prices were low inducement prices consistent with good development practices, that the development was foreseen as a long range one, and its progress to date fulfilled the owners’ expectations. Defendant was waiting to sell the lots fronting the highway until the subdivision was more fully developed and intended to be selective in choosing a buyer who would place a commercial business conducive to raising the value of the remaining lots in the subdivision.
Green Oaks Subdivision is in the outlying suburbs of the City of Eunice, Louisiana, approximately three miles north of the city limits. North of Eunice, Louisiana Highway 13 is built up with homes along the highway to Green Oaks Subdivision, and the area beyond to the north is predom *344 inately agricultural, although there are scattered homes for a distance further to the north, including a small subdivided area.
When the subdivision was platted in 1959, an additional ten foot strip along the highway was dedicated for the eventual widening of the road. It was not anticipated at that time that the ten feet would be inadequate. The land for which compensation is sought herein is an additional strip approximately 58 feet in width off of the east side of the twelve lots fronting on the highway. After the taking, these lots were reduced in size to • a depth of less than 100 feet. The depth of the lots cannot be increased if sold for commercial purposes, because of the residential restrictions on the lots comprising the balance of the subdivision.
Defendant’s main expert witness was F. J. Derouen, Sr., a real estate broker of Eunice, Louisiana, with fifteen years experience, which included the development of another subdivision between Eunice and Green Oaks Subdivision. He valued the twelve lots in question at the time of the taking at $2,450.00 each, or $29,400.00 total. He valued the remainder of these lots after the taking at $1,600.00 for a total loss of $27,800.00. He testified the residential lots were damaged to the extent of $75.00 each, at least for a while, because they were closer to the highway which would now be more heavily travelled. It was stipulated that the testimony of Equila Duplechin, a real estate broker of Eunice, with twenty-two years experience, would be the same as that of Mr. Derouen.
The plaintiff’s expert witnesses were Mr. Maurice Chappuis of Lafayette, who had eight years experience as an appraiser and was a member of the American Institute of Real Estate Appraisers, and Mr. Stanley A. Tiger, a real estate broker and appraiser of Crowley since 1949. Mr. Chap-puis valued the 12 lots in question at $8,400.00 before the taking and at $5,215.00 after the taking, with a resulting loss of $3,185.00. It was his opinion that there were no severance damages. Mr. Tiger valued the 12 lots at $10,000.00 before the taking and computed the value of the property taken on a square footage basis of 10.8^ per square foot to total $3,820.00. He also found no severance damages to the remaining properties.
The district court found that each of the 12 lots in question had a value of $2,000.00 at the time of the taking; and that after the taking, the lots could still be used for commercial purposes by combining two lots to make one lot, resulting in six lots which would still have a valuation of $2,000.00 each. Without separating the amount awarded for the area expropriated from the severance damages to the remaining portion of the 12 lots, the district court made an award to the defendants of $12,-000.00. It found no severance damages with respect to the remaining residential lots.
Plaintiff argues that the district court erred in accepting the testimony of defendant’s expert witnesses and disregarding the testimony of plaintiff’s expert witnesses, despite their superior qualifications and their more cogent and realistic testimony ; that the basis for the district court’s award was improper; and that there was no finding as to the highest and best use of the property for the purpose of determining the market value of the part taken and severance damages, if any.
Defendant contends the district court properly discredited the testimony of plaintiff’s expert witnesses, as the comparative or market data approach could not be used with any degree of accuracy in this case because of the peculiarity of location and typography involved; that the district court’s valuation of each lot on the highway at $2,000.00 was substantially correct, but that its conclusion as to the value of the remaining portion of these lots, after the taking, was erroneous, since it ignored the realities of the parking problem at suburban commercial establishments. Counsel *345 for defendant also contends that the district court erred in ignoring the severance damages to the residential lots resulting from the conversion of the farm-to-market road to a wide and heavily travelled highway.
Our first consideration will be to determine the highest and best use of the 12 lots on the highway.
Plaintiff urges that it was never established that the property was commercial in nature. However, the record shows that when the subdivision was platted, the property was left unzoned to be sold as commercial lots. Defendant had not put these lots on the market, as the owners of the corporation were waiting until they could obtain their price and sell to a business that would enhance the value of the remaining lots in the subdivision. The record also reveals that the area was developing, as is evidenced by a small subdivision about one-half mile further to the north. In the immediate area there were several commercial establishments, including a large amusement park with a lake swimming pool, rides for children, and picnic areas. There was also a repair shop and a package liquor store. A closed drive-in was taken by the new highway. In valuing the lots fronting the highway, the defendant’s appraisers did so on their commercial basis. One of plaintiff’s appraisers also testified he would consider the property as residential or commercial, and would place the same value for either purpose. The district court viewed the property and the surrounding area, was familiar with the Eunice area, and considered the property to be commercial in fixing its value. This court is in agreement with the trial judge that the highest and best use of the property at the time of the taking was for commercial purposes.
In arriving at the value of $2,000.00 per lot at the time of the taking, the district court refused to accept the testimony of the expert witnesses as based on com-parables or the market data approach. Instead, the court accepted the general appraisal of defendant’s expert witness, Mr. Derouen, as to the value of the lots, aside from comparables. Mr. Derouen testified he could not find any comparable sales of lots in the area, and therefore, had used as comparables certain lots in well-developed subdivisions near the city limits of Eunice. Two of his three main com-parables were sales which occurred after the date of the expropriation. Counsel for defendant acknowledges that these com-parables do not have overwhelming probative value, but asserts that the comparables used by plaintiff’s appraisers are of even less probative value. Plaintiff’s appraisers studied some thirty-two sales in the area, but acknowledged that but a handful of these could be used as comparables. The record shows that these comparables had little probative value in fixing the value of the property involved in this case. Except for the sales of residential lots in Green Oaks Subdivision, the comparables used by plaintiff’s appraisers were sales of acreage, or undeveloped property on the highway, and were analyzed mainly on a square footage or front footage basis. Mr. Chappuis relied on comparables identified as Nos. 6, 7-K, 9, 14, 17 and 18. Mr. Tiger used comparables Nos. 9, 14, 17, 18 and 19, and five sales of residential lots in Green Oaks Subdivision. No. 6, a sale on December 15, 1964, to Cleco was of property a half mile further to the north, and past the suburban development. No 7-K was a sale of one of the residential lots in Green Oaks Subdivision. No. 14 was a sale to a relative. Nos. 17 and 18 were lands that contained a drainage area, were subject to flooding, were covered in areas by sawdust to an undetermined depth, and were inherently a part of an amusement park near a large lake. Nos. 19 and 9 are adjacent properties, each comprising approximately one acre, sold to Mr. Lesbay Fontenot in 1964 for $1,900.00 and $1,950.00, respectively. At the time of these sales, this property was heavily overgrown with brush, had stumps on it, was low in terrain, and was near several large sawdust piles. There was testimony *346 that this property had doubled in value between 1964 and January, 1966.
After having analyzed the numerous comparables, we also conclude that none are really comparable to the twelve lots in •question. These front lots were certainly •considerably more valuable than the restricted residential lots to the rear of the subdivision. On a per square foot basis, they were much more valuable than the comparables used by plaintiff’s appraisers. These lots were the first high level properties at the end of the suburban development north of Eunice. The land had been •cleared and levelled. Utilities were furnished to the subdivision. As a commercial property, it had potential customers from the residential lots in the subdivision. On the other hand, we do not find that these lots had the same value as those of the well-developed subdivisions near the city limits of Eunice.
Since the trial judge found no acceptable comparables he used the value placed on said lots by Mr. Derouen, but reduced the value of each lot from $2,450.00 as testified to by Mr. Derouen to the sum of $2,000.00. The value placed on property expropriated is more or less arbitrary as it is difficult to find comparables. In view of the inflationary trend in the last decade, we cannot say that the trial judge committed error in placing a value of $2,000.00 per lot at the time of the taking in 1966.
We agree with the district court that the loss of depth reduced considerably the value of the lots because of the importance of parking space to suburban commercial property. We find acceptable the method of fixing that value by the district court, that is, by taking two of the remaining portions of the lots to form one lot of approximately 100 feet by 98 feet in size. We also value the six remaining lots at $2,000.00 each, totalling $12,000.00, which, when subtracted from the value before the taking of $24,000.00, leaves damages of $12,000.00.
We agree with the holding of the district court that the remaining residential lots suffered no severance damages from the taking.
In awarding $12,000.00 less $3,820.00 previously paid, the trial judgment inadvertently called for interest from judicial demand on the excess, whereas the interest should be from the taking. The trial court judgment is amended to show interest from the taking and in all other respects is affirmed.
Amended and affirmed.